(No. 81-CC-0188-)

RICHARD L. GAISER, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed September 10, 1990.*
*Order filed May 13, 1993.*

SPECTOR & LENZ, for Claimant.

ROLAND W. BURRIS, Attorney General (PAUL M. SENGPIEHL, Assistant Attorney General, of counsel), for Respondent.

## ORDER

DILLARD, J.

Introduction:

This cause comes on to be heard upon the claim of Richard Gaiser bringing an action in tort against the State of Illinois, Department of Mental Health and Development Disabilities. Claimant alleges that the Respondent was negligent and that it violated the duty to exercise reasonable care for the safety and welfare of its patients and duty to exercise reasonable care to prevent an individual within the custody of the Respondent from inflicting injury upon himself.

Six pretrial conferences were held in this matter during which discovery was completed. A hearing was

held in this matter consisting of five sessions from October 21, 1982, through November 17, 1982.

Facts:

The Claimant, Richard Gaiser, was born on July 28, 1950. On July 17, 1978, Claimant was voluntarily admitted to Tinley Park Mental Health Center. The Claimant was admitted and was diagnosed as mentally retarded with psychosis symptoms. Tinley Park Mental Health Center is a minimum security institution. The purpose of Tinley Park Mental Health Center is to return the patient to society as a functional member of the community.

From July 17, 1978, through August 19, 1978, the Claimant was placed in restraints on eight occasions. The Claimant's father informed Respondent's staff that Claimant was engaging in head banging, running into walls, moaning and engaging in threatening gestures. Upon admission, the preliminary diagnosis indicated that the Claimant was potentially dangerous to himself. On August 9, 1978, the Claimant, while in restraints, managed to free his hand and lacerate his left eye and tear duct. From August 16 through August 18, 1978, Claimant's behavior was uneventful and he was never placed in restraints during that period.

It was common practice to observe a patient for three days after admission and to permit the patient a grounds pass if no behavioral problems were exhibited. The grounds passes were kept at a nursing station in a box. Claimant requested a pass from Dr. Soo Ja Song on August 18, which was refused because it was her personal policy not to issue grounds passes on Fridays.

On the morning of August 19, 1978, Ms. Thompson, an employee of the Respondent, did allow the

Claimant off the male unit. The testimony of Ms. Thompson was that the Claimant exhibited an orange pass which was the appropriate color for temporary release from the facility and further that the Claimant exhibited exemplary behavior, grooming, and dress. The testimony of the Claimant varied between not remembering whether he did or did not exhibit a grounds pass, to identifying that he did show a pass to her.

Respondent indicates in its statement of facts that the employee had no knowledge that the Claimant was attempting an escape, that he was not to be let off the ward, or that he was not to leave the floor. Subsequently, the Claimant was discovered by Tinley Park Mental Health Center security in a ditch at the border of the grounds. He had engaged in behavior that resulted in the gouging of his right eye. Claimant was brought to South Suburban and Billings Hospital for treatment.

At Billings Hospital the Claimant's right eye was surgically removed and extensive lacerations to the upper and lower lids of each eye were treated. On April 2, 1979, the Claimant was given absolute discharge from the Respondent's mental health system. From that date to the date of hearing, Claimant has found a course of assimilation into the community. Claimant has an apartment, friends, and appears to be adjusting well.

Law:

The Court has held that a hospital is not an insurer of a patient's safety, but owes a patient the duty of protection and must exercise such reasonable care as the patient's known condition may require. (*Todd v.*

*State* (1983), 32 Ill. Ct. Cl. 647.) The Court further developed a standard of care in *Reynolds v. State* (1983), 35 Ill. Ct. Cl. 647.

In *Reynolds,* a claim was brought against the State of Illinois alleging that the respondent was negligent in failing to observe, guard, or care for the claimant. The evidence showed that the claimant was admitted to a minimum security unit on July 3, 1976, after the examining physician diagnosed acute psychotic episode. In the course of the next 34 hours the claimant attempted to escape on several occasions and finally escaped on July 4, 1976. On the morning of July 6, 1976, the claimant jumped in the Chicago River and drowned. This Court denied the claim. In *Reynolds, supra,* at 49, the Court stated:

"The burden of proof is on the claimant to warrant the imposition of liability and negligence against the hospital. The State, by the Department of Mental Health, owes its patients the duty of protection and must exercise reasonable care toward the patients as the patient's known condition may require, including safeguarding of a patient from dangers due to mental incapacity when such mental incapacities are known or by the exercise of reasonable care ought be known. The State is not, however, an insurer of the safety of the patients under the care of its Department of Mental Health."

Thus, the claimant has the burden of showing that the respondent failed to exercise reasonable care for the patient given his known condition. The claimant in *Reynolds* did not meet its burden.

The *instant* case also has the factual element of escape, which has been addressed by this Court in *Calvin v. State* (1982), 35 Ill. Ct. Cl. 611. This Court has held that before recovery can be made in such cases, claimant must prove that a lack of proper and reasonable care existed. It is then the claimant's burden to prove that the respondent failed to exercise due

care and failed to prevent escape where it could have reasonably been expected to predict the escape. The respondent cannot be held liable unless it knew or should have reasonably been expected to know of, or predict, a patient's sudden escape. Furthermore, the claimant must demonstrate that the injuries suffered were the proximate result of the breach of the duty by respondent.

In *Calvin v. State* (1982), 35 Ill. Ct. Cl. 611, this Court denied a claim of a claimant who was admitted to Tinley Park Mental Health Center in 1975. At the time the claimant entered the Tinley Park Mental Health Center, he could not leave without permission or a pass, and the doors to his unit were opened and closed with a key which was in the hands of authorized personnel. The claimant asked permission to leave the area but was refused. Upon observing an attendant of the hospital leaving, he ran through the door and exited the facility. Approximately 25 minutes after he escaped from the facility he was discovered dead on nearby railroad tracks.

In *Calvin*, the claimant alleged that the respondent failed to provide proper care, supervised patrol, or properly trained security guards, thereby breaching its duty of care towards the claimant. Unlike the instant case, in the *Calvin* matter, the parties presented testimony of several physicians and psychiatrists with regard to the suitability of the care rendered and security precautions taken. The Court denied the claim, holding that the respondent was not liable because it could not have known nor predicted the claimant's escape.

The instant action presents several similar factual patterns to *Reynolds* and *Calvin*. Here, the Claimant

was admitted to a minimum security unit, received care for the diagnosed symptomatology and exhibited erratic and sometimes self-threatening behavior, attempted escape and proceeded in doing harm to himself. Similarly, as in *Calvin* and *Reynolds,* the Claimant has not shown that the action taken by the Respondent through its employees violated any standards of care as were applied to the Respondent at the time in question. The Claimant never called any expert witnesses in the area of psychiatric treatment of the Claimant's disorders; Claimant never presented evidence with regard to the adequacy or size of the personnel on duty or with regard to the security at the Tinley Park Mental Health Center.

Conclusion:

Claimant solely relies on the fact that the Claimant was able to leave the unit on August 19, 1978, in spite of a denial of a pass by Dr. Soo Ja Song on August 18, 1978, and that the Claimant injured himself. Claimant suggests that his own erratic behavior in the 33 days prior to August 19, 1978, should have precluded Respondent's employee, Ms. Thompson, from releasing Claimant with what appeared to be an appropriate grounds pass on August 19, 1978.

It is regrettable that the Claimant suffered such a tragic, painful and permanent injury. However, the severity of the injury alone is not enough to assess liability against the Respondent for breaching its duty of care to the Claimant.

The evidence as submitted clearly indicates that the Claimant was receiving the attention of the Respondent in this facility and that its employees were exercising attentive care for his behavior, as is clearly

evidenced by the fact that the Respondent had the Claimant in protective restraint on 8 of the 33 days from admission to injury. Furthermore, Claimant was exhibiting normal behavior for three full days prior to August 19, 1978, and through his own actions convinced the Respondent's employee that he had an appropriate grounds pass.

It is very clear that the Respondent's employee was impressed with the cleanliness and grooming of the Claimant at that time. There is nothing in the evidence to indicate that the Respondent's employee should have been put on alarm or in fear that the Claimant was attempting to engage in anything other than normal grounds activity which the Claimant had been engaged in on prior occasions.

For the above stated reasons, the Court finds that the Claimant failed to sustain his burden of proof. Therefore, it is hereby ordered that this complaint is denied.

## ORDER

JANN, J.

This cause comes on to be heard on the petition of Claimant for rehearing, the Court being fully advised in the premises and having conducted a careful review of the record finds:

Claimant's petition for rehearing is hereby denied.